**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| WHITE LABEL LEAF LLC,<br><br>Plaintiff,<br><br>v.<br><br>RIZ LLC d/b/a R&S WHOLESALE,<br><br>Defendant. | **Case No.**<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff White Label Leaf LLC ("Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendant RIZ LLC d/b/a R&S Wholesale ("Defendant" or "RIZ"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action to stop Defendant's unauthorized use, distribution, promotion, and sale of products bearing the confusingly similar BLUE MONKEY name, monkey-head mascot, and associated branding.

2. Plaintiff has used the FLYING MONKEY name in commerce since at least April 22, 2022. Plaintiff also uses distinctive smoking-monkey artwork and related brand imagery in connection with FLYING MONKEY products. Plaintiff's asserted common-law trademark rights in this action arise from the FLYING MONKEY designation (the "FLYING MONKEY Mark"); the associated artwork and packaging are relevant marketplace context bearing on likelihood of confusion.

3. Plaintiff has invested substantial time, effort, and resources developing, promoting, and protecting the FLYING MONKEY Mark and the goodwill associated with it.

4. Defendant distributes, markets, offers for sale, and/or sells competing or closely related products using the designation BLUE MONKEY and a prominent blue monkey-head mascot. The accused packaging also employs a blue and dark color palette, a stacked two-word logotype, and other design elements that create a commercial impression similar to Plaintiff's established branding.

5. Defendant's conduct has generated marketplace inquiries bearing on source and affiliation. Industry participants familiar with Plaintiff have independently asked whether BLUE MONKEY is Plaintiff's brand or is affiliated with Plaintiff.

6. Plaintiff therefore seeks injunctive relief, Defendant's profits, Plaintiff's damages, and other relief available under the Lanham Act and Florida common law.

**JURISDICTION AND VENUE**

7. This Court has original subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a)–(b) because this action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

8. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claim.

9. This Court has specific personal jurisdiction over Defendant under Florida Statutes section 48.193(1)(a)1–2 because Defendant operates an interstate wholesale business, maintains commercial online ordering and checkout functionality, and, upon information and belief, manufactures and/or distributes the accused BLUE MONKEY products through wholesale and reseller channels that reach Florida. On September 23, 2026, Plaintiff's investigator placed an

order for an accused BLUE MONKEY product for delivery to St. Petersburg, Florida, in Pinellas County. The order was fulfilled, and the accused product was subsequently delivered in St. Petersburg. Photographs of the delivered package and product show a BLUE MONKEY Blue Lotus "Cherry" 3-gram product; the back panel states "DISTRIBUTED BY Blue Monkey." Plaintiff alleges that the completed Florida transaction is consistent with Defendant's placement of BLUE MONKEY products into interstate wholesale and reseller channels.

10. Defendant has purposefully availed itself of interstate commercial distribution through the R&S Wholesale business. Defendant's own wholesale website offers products through shopping-cart and checkout functionality and advertises shipment of wholesale orders. Evidence obtained by Plaintiff separately identifies RIZ LLC d/b/a R&S Wholesale as an owner, manufacturer, and/or distributor of BLUE MONKEY products. Upon information and belief, Defendant has supplied those products into reseller channels serving Florida.

11. The exercise of jurisdiction comports with due process because Plaintiff's claims arise from Defendant's alleged manufacture and distribution of the accused BLUE MONKEY products into interstate commercial channels, including channels serving Florida, and from the resulting offering for sale and completed delivery of an accused BLUE MONKEY product in Florida. The September 23, 2026 order and subsequent delivery corroborate that accused BLUE MONKEY products are commercially available for shipment into Florida. The delivered product bears the same BLUE MONKEY designation and monkey-head branding identified in the Defendant-linked distributor materials.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including the September 23, 2026 order and subsequent delivery of an accused BLUE MONKEY product in St. Petersburg, Pinellas

County, Florida, and the resulting alleged injury to Plaintiff's FLYING MONKEY goodwill in this District. Pinellas County is within the Tampa Division of this Court.

## THE PARTIES

13. Plaintiff White Label Leaf LLC is an active Florida limited liability company.

14. Plaintiff owns common-law rights in the FLYING MONKEY Mark based on its actual use of that designation in commerce.

15. Defendant RIZ LLC is, upon information and belief, an Alabama limited liability company doing business as R&S Wholesale.

16. Defendant operates a wholesale business under the R&S Wholesale name from 255 Riverchase Parkway, Suite E, Birmingham, Alabama 35244, and through a commercial wholesale website.

17. Evidence obtained by Plaintiff identifies RIZ LLC d/b/a R&S Wholesale as an owner, manufacturer, and/or distributor of the BLUE MONKEY-branded products at issue. A separate client-provided distributor document bearing the RIZ LLC and R&S Wholesale names lists 600 units of BLUE MONKEY 3G Blue Lotus pre-roll products across ten product varieties.

18. Defendant is directly liable for its own use of the accused branding in commerce and for its manufacture, distribution, promotion, offering for sale, and/or sale of products bearing that branding.

## PLAINTIFF AND THE FLYING MONKEY MARK AND BRANDING

19. Plaintiff develops, markets, distributes, and sells products under the FLYING MONKEY brand, including vaporizer, pre-roll, gummy, and related smoke-shop products.

20. Plaintiff's claims in this action arise from common-law rights based on actual marketplace use of the FLYING MONKEY Mark rather than from ownership of a federal registration.

21. Plaintiff has used the FLYING MONKEY name in commerce since at least April 22, 2022.

22. The Social Brands Invoice No. 91, dated April 22, 2022, documents the interstate sale of 1,200 products bearing the FLYING MONKEY name to Elements Acquisition LLC in Norcross, Georgia. Plaintiff owned and operated the FLYING MONKEY brand at that time, and The Social Brands distributed FLYING MONKEY-branded products with Plaintiff's authorization.

23. The side-by-side images below depict Plaintiff's smoking-monkey artwork used in connection with the FLYING MONKEY brand and the accused BLUE MONKEY branding. Plaintiff relies on these visual features as marketplace context relevant to consumer perception and likelihood of confusion, not as a separately asserted common-law mark or trade dress.

<table>
<tr><th>Plaintiff's FLYING MONKEY Artwork</th><th>Accused BLUE MONKEY Branding</th></tr>
<tr><td></td><td>
</td></tr>
</table>

24. The Social Brands has distributed FLYING MONKEY-branded products since 2022. Plaintiff's use of the FLYING MONKEY Mark has continued through authorized wholesale and distribution channels. Plaintiff controls the nature and quality of goods sold under the license.

25. FLYING MONKEY-branded products have been sold continuously since 2022, and Plaintiff continues to use the FLYING MONKEY Mark in commerce.

26. Plaintiff's presently identified markets include Alabama, California, Florida, Georgia, Hawaii, Illinois, Indiana, Mississippi, Missouri, Nebraska, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia.

27. Plaintiff has an established Florida market. The Social Brands Invoice No. 4966, dated August 18, 2026, documents the shipment of substantial quantities of FLYING MONKEY-branded pre-roll products through an authorized distribution channel to Good Price Wholesale LLC in Hollywood, Florida.

28. The FLYING MONKEY Mark is inherently distinctive as applied to Plaintiff's products because the phrase is arbitrary or, at minimum, suggestive and does not describe the nature, characteristics, or qualities of those goods. Plaintiff's use and promotion of the mark have also developed substantial goodwill.

29. Plaintiff prominently displays the FLYING MONKEY Mark and related brand imagery on product packaging, promotional materials, websites, advertisements, retail displays, and other commercial materials.

30. Plaintiff has invested substantial time, money, and resources developing and promoting the FLYING MONKEY brand through its sales and distributor relationships.

31. As a result of Plaintiff's use and promotion, consumers, retailers, wholesalers, distributors, and other industry participants recognize the FLYING MONKEY Mark as identifying products originating from, sponsored by, or authorized by Plaintiff.

32. The FLYING MONKEY Mark embodies valuable goodwill and is a material asset of Plaintiff's business.

33. Upon information and belief, Defendant did not begin using the BLUE MONKEY designation until years after Plaintiff began using FLYING MONKEY in 2022.

34. Plaintiff has not licensed or authorized Defendant to use the FLYING MONKEY Mark, the BLUE MONKEY designation, a confusingly similar monkey mascot, or any other designation likely to create a false impression of affiliation with Plaintiff.

35. Plaintiff's pre-roll and vaporizer products are sold through smoke shops, wholesalers, distributors, and related adult-oriented retail channels in which multiple competing brands are commonly offered side by side, including Defendant's BLUE MONKEY Products.

36. Plaintiff uses prominent smoking-monkey artwork and other related visual branding together with the FLYING MONKEY name in those channels.

37. Plaintiff relies on the associated artwork and packaging as marketplace context relevant to how consumers encounter the FLYING MONKEY Mark.

## DEFENDANT'S UNLAWFUL CONDUCT

38. Plaintiff learned that BLUE MONKEY-branded products were being marketed and distributed through wholesale channels serving the same general market as Plaintiff's FLYING MONKEY products.

39. The accused products include BLUE MONKEY Blue Lotus pre-roll products advertised in multiple flavors or varieties, including Cake Master, Blueras Cotton, Cherry, Dragon Fruit, Obsidian, Menthol Ice, Melon, Mad Bunny, Space Monkey, and Bliss Butter.

40. The accused packaging prominently displays the words BLUE MONKEY in a stacked, stylized logotype and a prominent blue monkey-head mascot.

41. Representative FLYING MONKEY and BLUE MONKEY packaging is depicted below. The packaging is alleged as marketplace context bearing on consumer perception and likelihood of confusion, not as a separately asserted trade dress.

<table>
<tr><th>Representative FLYING MONKEY Packaging</th><th>Representative BLUE MONKEY Packaging</th></tr>
<tr><td>
</td><td>
</td></tr>
</table>

42. Defendant uses and distributes the BLUE MONKEY designation and monkey mascot on products sold through the same or closely related smoke-shop, wholesale, and reseller channels as Plaintiff's products.

43. Both parties prominently use monkey imagery in connection with their respective branding, and both designations contain the identical term "MONKEY."

44. The parties' products include pre-roll and other smoke-shop products and are marketed to the same or overlapping wholesalers, retailers, and adult consumers.

45. The parties' packaging and presentation—including blue or dark tones, stylized lettering, and vertical retail packaging—form part of the marketplace context in which consumers encounter the marks; Plaintiff does not assert those features as a separate protected trade dress.

46. The parties' respective products are encountered by the same or overlapping classes of consumers, retailers, wholesalers, and distributors.

47. The parties' relatively inexpensive smoke-shop products may be purchased without extensive investigation, increasing the possibility of source or affiliation confusion.

48. Public promotional materials provided to Plaintiff advertise at least ten varieties of BLUE MONKEY Blue Lotus pre-roll products and direct consumers to obtain their preferred varieties.

49. A separate client-provided distributor document bearing the RIZ LLC and R&S Wholesale names identifies BLUE MONKEY 3G Blue Lotus pre-roll products in the same ten product varieties and lists a total of 600 units.

50. A Florida wholesaler familiar with the accused products separately identified "Riz llc Alabama" as connected to the manufacturing of BLUE MONKEY and identified RIZ as the owner of the brand.

51. True and correct copies of representative images of Plaintiff's FLYING MONKEY products and the accused BLUE MONKEY products, supporting materials identifying RIZ LLC d/b/a R&S Wholesale's connection to BLUE MONKEY, the September 23, 2026 Florida test-purchase order confirmation, and photographs documenting delivery of the accused product in St. Petersburg, Florida are attached as Exhibit 1.

52. Defendant operates the R&S Wholesale commercial wholesale business, which maintains online shopping-cart and checkout functionality and advertises shipment of wholesale orders.

53. Upon information and belief, Defendant supplies and distributes BLUE MONKEY products through interstate wholesale and reseller channels, including channels reaching Florida. On September 23, 2026, Plaintiff's investigator placed an order for an accused BLUE MONKEY product through Green Treez Company for delivery to St. Petersburg, Florida. Order Confirmation No. IWM4890HG reflects one item, a total charge of $20.99, and a Florida delivery address. The order was fulfilled and delivered in St. Petersburg. The delivered product is a BLUE MONKEY Blue Lotus "Cherry" 3-gram product bearing the accused BLUE MONKEY name and monkey-head branding, and the back panel states "DISTRIBUTED BY Blue Monkey."

54. Defendant's use and distribution of BLUE MONKEY branding in overlapping wholesale and retail channels is likely to cause consumers to mistakenly believe that BLUE MONKEY is a product line, affiliate, extension, or sub-brand of Plaintiff.

55. Defendant uses the accused designation in commerce without Plaintiff's authorization.

56. Defendant's use is likely to cause consumers and industry participants to believe that the accused products originate from, are sponsored by, are approved by, or are affiliated with Plaintiff.

57. Marketplace inquiries have occurred among industry participants familiar with Plaintiff's FLYING MONKEY brand concerning whether BLUE MONKEY is Plaintiff's product or is affiliated with Plaintiff.

58. Plaintiff has received at least two independent inquiries concerning whether BLUE MONKEY was Plaintiff's product or was affiliated with Plaintiff.

59. On August 8, 2026, a Texas industry participant sent Plaintiff a photograph of BLUE MONKEY packaging and asked whether the product was Plaintiff's. Plaintiff responded that it was not.

60. On August 14, 2026, a Virginia distributor familiar with Plaintiff asked whether "Blue monkey is you guys?" Plaintiff responded that it was not.

61. Those inquiries arose independently and from different geographic markets and are relevant evidence concerning marketplace perception and likelihood of confusion.

62. True and correct copies of representative, appropriately redacted confusion communications are attached as Exhibit 2.

63. These communications reflect that persons familiar with Plaintiff's FLYING MONKEY brand have questioned whether BLUE MONKEY is connected with Plaintiff.

64. Upon information and belief, Defendant adopted or continued distributing the accused products after Plaintiff had established its marketplace presence under the FLYING MONKEY Mark.

65. Defendant's conduct deprives Plaintiff of control over its reputation and goodwill and threatens to impair Plaintiff's relationships with consumers, retailers, wholesalers, and distributors.

66. Defendant's continued distribution and sale of the accused products also threatens to divert sales and commercial opportunities from Plaintiff.

67. Unless enjoined, Defendant is likely to continue and expand its distribution, marketing, offering for sale, and sale of products bearing the accused branding.

68. Defendant's continuing conduct will cause further confusion and injury that cannot be fully remedied through monetary relief alone.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN**
**15 U.S.C. § 1125(a)(1)(A)**

69. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70. Through its prior and continuous use in commerce, Plaintiff owns valid and enforceable common-law rights in the FLYING MONKEY Mark in connection with smoke-shop, smoking, vaporizer, pre-roll, gummy, and related products in the geographic markets where Plaintiff has established use and market penetration.

71. Plaintiff began using the FLYING MONKEY name in commerce in 2022 and has continuously used the FLYING MONKEY Mark in commerce since that time.

72. Defendant uses in commerce the BLUE MONKEY designation and monkey-head imagery in connection with the advertising, promotion, distribution, offering for sale, and sale of the accused products.

73. Defendant's use is without Plaintiff's authorization.

74. Defendant's branding creates a confusingly similar overall commercial impression when encountered in the marketplace because of the prominent monkey imagery, the shared "MONKEY" term, the overlapping smoke-shop product categories, and the parties' shared wholesale and retail channels.

75. Defendant uses the accused branding on competing or closely related products marketed through overlapping channels to the same or overlapping consumers.

76. Defendant's conduct is likely to cause confusion, mistake, or deception concerning the affiliation, connection, or association between Defendant and Plaintiff and concerning the origin, sponsorship, or approval of Defendant's products.

77. Marketplace inquiries have occurred concerning whether BLUE MONKEY products originate from, are affiliated with, or are authorized by Plaintiff.

78. Defendant's conduct constitutes trademark infringement and false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

79. Defendant's conduct has caused and is likely to continue causing damage to Plaintiff's goodwill, reputation, sales, and ability to control the use of its mark.

80. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116, recovery of Defendant's profits, Plaintiff's damages, and costs under 15 U.S.C. § 1117(a), and appropriate relief under 15 U.S.C. § 1118.

## COUNT II
## FLORIDA COMMON-LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

81. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

82. Plaintiff owns prior common-law rights in the FLYING MONKEY Mark through its use of that designation in commerce in the geographic markets where Plaintiff has established market penetration.

83. Defendant has used, distributed, marketed, offered for sale, and/or sold products bearing the BLUE MONKEY designation and monkey imagery in a manner likely to cause confusion with Plaintiff's FLYING MONKEY Mark in overlapping markets and trade channels.

84. Defendant's conduct is likely to cause consumers and industry participants to believe incorrectly that Defendant or the accused products are affiliated with, sponsored by, approved by, or otherwise connected with Plaintiff.

85. Defendant's conduct constitutes common-law trademark infringement, passing off, and unfair competition.

86. Defendant has thereby traded upon and threatens to impair the goodwill Plaintiff developed in the FLYING MONKEY Mark.

87. Defendant's conduct has caused and will continue to cause Plaintiff irreparable injury and monetary damages.

88. Plaintiff is entitled to injunctive relief, Defendant's profits, Plaintiff's actual damages to the extent proven, and other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a. Finding that Defendant violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

b. Finding that Defendant committed common-law trademark infringement and unfair competition;

c. Temporarily, preliminarily, and permanently enjoining Defendant and its officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with it who receive actual notice of the injunction, within the geographic markets in which Plaintiff has established common-law rights in the FLYING MONKEY Mark and any legally cognizable zone of natural expansion, from:

i. using BLUE MONKEY, the accused monkey-head imagery, or any other designation confusingly similar to the FLYING MONKEY Mark in connection with the manufacture, importation, advertising, promotion, distribution, offering for sale, or sale of competing or closely related products;

ii. representing, expressly or by implication, that Defendant or its products are affiliated with, sponsored by, approved by, authorized by, or otherwise connected with Plaintiff;

iii. passing off Defendant's products as products originating from or authorized by Plaintiff;

iv. using the accused branding in product titles, packaging, advertisements, websites, social-media accounts, metadata, search-engine terms, or other promotional materials in a manner likely to cause confusion;

v. supplying, distributing, shipping, or otherwise transferring products bearing the accused branding to wholesalers, retailers, resellers, or consumers; and

vi. assisting, inducing, or enabling another person or entity to engage in the prohibited conduct;

d. Directing Defendant to recall from its wholesalers, distributors, retailers, and other customers materials bearing the accused branding;

e. Directing Defendant to deliver for destruction the infringing labels, signs, prints, packages, wrappers, receptacles, advertisements, and means of producing them, as authorized by 15 U.S.C. § 1118;

f. Directing Defendant to file and serve the written compliance report required by 15 U.S.C. § 1116(a);

g. Requiring Defendant to provide a complete accounting and to disgorge the profits attributable to its unlawful conduct;

h. Awarding Plaintiff its actual damages under 15 U.S.C. § 1117(a), to the extent proven;

i. Enhancing Plaintiff's damages to the extent authorized by 15 U.S.C. § 1117(a);

j. Declaring this an exceptional case and awarding Plaintiff its reasonable attorneys' fees under 15 U.S.C. § 1117(a);

k. Awarding prejudgment and post-judgment interest; and

l. Awarding such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: October 5, 2026

Respectfully submitted,

By: /s/ William R. Brees
William R. Brees (FL Bar No. 98886)
**BAYRAMOGLU LAW OFFICES, LLC**
1540 West Warm Springs Road, Suite 100
Henderson, NV 89014
Tel: (702) 462-5973 | Fax: (702) 553-3404
William@bayramoglu-legal.com
*Counsel for Plaintiff*